## COMMONWEALTH *vs.* RICHARD RUNYAN.

Middlesex. November 5, 2009. - March 10, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Firearms. Constitutional Law,* Right to bear arms. *Due Process of Law,* Substantive rights. *Statute,* Validity.

A District Court judge hearing the criminal defendant's motion to dismiss one count of a complaint charging him with storing or keeping a firearm that was not secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, in violation of G. L. c. 140, § 131L (*a*), erred in granting the motion on the ground that § 131L (*a*) unconstitutionally infringed on the right to bear arms under the Second Amendment to the United States Constitution, where, under existing Federal law, the Second Amendment does not apply to the States, either through the guarantee of substantive due process under the Fourteenth Amendment to the United States Constitution or otherwise, and therefore imposes no limitations on the ability of the Legislature to regulate the possession of firearms and ammunition [232-235]; and where § 131L (*a*) does not make it impossible for a person licensed to possess firearms to rely on them for lawful self-defense, in that the statute does not require that firearms in the home be rendered and kept inoperable at all times or prohibit a licensed gun owner from carrying a loaded firearm in the home [235-237].

COMPLAINT received and sworn to in the Lowell Division of the District Court Department on April 4, 2008.

A motion to dismiss was heard by *Geoffrey C. Packard,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Loretta M. Lillios,* Assistant District Attorney (*KerryAnne Kilcoyne,* Assistant District Attorney, with her) for the Commonwealth.

*Brenden J. McMahon & Edward F. George, Jr.,* for the defendant.

The following submitted briefs for amici curiae:

*Jonathan E. Lowy & Daniel R. Vice,* of the District of Columbia, *& Scott Harshbarger, Bernard D. Gold, Gil N. Peles,*

*Clifford Davidson, & Jennifer L. Roche* for Brady Center to Prevent Gun Violence & others.

*Daniel F. Conley*, District Attorney, *& David A. Deakin & Joseph M. Ditkoff*, Assistant District Attorneys, for District Attorney for the Suffolk District.

*Martha Coakley*, Attorney General, *& James J. Arguin & Pamela L. Hunt*, Assistant Attorneys General, for Attorney General & others.

*Edward F. George, Jr.*, for Second Amendment Foundation, Inc., & another.

GANTS, J. The defendant was charged in the Lowell Division of the District Court Department with storing or keeping a firearm that was not "secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner of other lawfully authorized user," in violation of G. L. c. 140, § 131L (*a*). On October 15, 2008, a judge dismissed the count against the defendant, explaining that he was "unable to distinguish the provisions of G. L. c. 140, § 131L, from those struck down" by the United States Supreme Court in *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008) (*Heller*), as unconstitutionally infringing the right to bear arms under the Second Amendment to the United States Constitution. The Commonwealth filed a timely notice of interlocutory appeal. We granted the Commonwealth's application for direct appellate review. We now reverse the judge's decision and vacate the dismissal of the count.[1]

*Background.* According to the police report that accompanied

---

[1] We acknowledge receipt of three amicus briefs submitted in support of the Commonwealth by (1) the Brady Center to Prevent Gun Violence, the International Brotherhood of Police Officers, the Legal Community Against Violence, the Massachusetts Chiefs of Police, the Massachusetts Million Mom March Chapter of the Brady Campaign to Prevent Gun Violence, and Stop Handgun Violence; (2) the Attorney General and the district attorneys for the Berkshire, Bristol, Cape and Islands, Eastern, Hampden, Middle, Norfolk, Northwestern, Plymouth, and Suffolk districts, the Executive Office of Public Safety and Security, the Executive Office of Health and Human Services and the Department of Public Health; and (3) the district attorney for the Suffolk district. We also acknowledge receipt of the amicus brief submitted in support of the defendant by the Second Amendment Foundation, Inc., and the Gun Owners Action League.

the application for a criminal complaint, police officers were dispatched to 7 Fernwood Road in Billerica following a report that "BB" pellets were being shot into the window of the house from a neighbor's house at 9 Fernwood Road. When the officers arrived, they observed the side window of 9 Fernwood Road, which faced the house at 7 Fernwood Road, being closed by a young male.

When the police officers went to 9 Fernwood Road, the only person at home was the defendant's eighteen year old son, who appeared to have developmental disabilities. The son admitted to the police officers that he had fired shots at his neighbor's house with a BB rifle that was in his bedroom closet. When the officers asked why he had been shooting at his neighbor's house, the son stated, "I hate him." When the officers asked the son if there were more guns in the house, the son took them to the defendant's bedroom and pointed to two soft carrying cases located under the bed. One case contained a shotgun secured with a trigger lock. The other contained a semiautomatic hunting rifle that had no gun locking device. When the officers asked if there was any ammunition for these firearms, the son opened a dresser drawer that contained rifle rounds and shotgun shells.

The defendant was charged with violating G. L. c. 140, § 131L (*a*), for failing to secure the rifle in a locked container or by means of a trigger lock or comparable safety device.[2] He moved to dismiss the count, arguing that the requirements of G. L. c. 140, § 131L (*a*), mandating the safe storage of firearms, impermissibly infringed his right to bear arms for self-defense under the Second Amendment to the United States Constitution, as articulated in *Heller, supra.* The judge allowed the motion to dismiss.

*Discussion.* In *Heller,* the Supreme Court held that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." *Id.* at 2821-2822. In doing so, the Court announced for the first time that the Second Amendment

---

[2]Because the defendant's firearms identification card had expired, the defendant was also charged with unlawful possession of the firearms and ammunition, in violation of G. L. c. 269, § 10 (*h*) (1).

protects a limited, individual right to keep and bear firearms for the purpose of self-defense, not simply a collective right to possess and carry arms for the purpose of maintaining a State militia. See *id.* at 2799, 2803.[3]

The judge's conclusion that the Supreme Court's decision in *Heller* required a dismissal of the count charging a violation of G. L. c. 140, § 131L (*a*), rests on two premises, both of which are in error. First, the decision assumes that the protection of the Second Amendment applies to the States as a matter of substantive due process under the Fourteenth Amendment to the United States Constitution. To reach such a conclusion would require a determination that the right protected under the Second Amendment is among those fundamental rights "implicit in the concept of ordered liberty." *Wolf* v. *Colorado*, 338 U.S. 25, 27-28 (1949), quoting *Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937) (Fourth Amendment's protection against unreasonable searches incorporated under Fourteenth Amendment's due process clause). See, e.g., *Louisiana ex rel. Francis* v. *Resweber*, 329 U.S. 459, 463 (1947) (humane tradition of Anglo-American law requires incorporation of Eighth Amendment's prohibition against cruel and unusual punishment under Fourteenth Amendment's due process clause); *Gitlow* v. *New York*, 268 U.S. 652, 666 (1925) (First Amendment's protections of freedom of speech and press among fundamental personal rights protected by Fourteenth Amendment's due process clause). Based on current Federal law, however, we cannot say that the Second Amendment applies to the States, either through the Fourteenth Amendment's guarantee of substantive due process or otherwise.

In *Heller*, the Supreme Court acknowledged that in *United States* v. *Cruikshank*, 92 U.S. 542 (1875) (*Cruikshank*), it held that "the Second Amendment does not by its own force apply to anyone other than the Federal Government." *Heller, supra* at 2812. In *Cruikshank, supra* at 553, the Supreme Court explained that the Second Amendment "means no more than that [the right to bear arms] shall not be infringed by Congress. This is one of the amendments that has no other effect than to restrict

---

[3]The Second Amendment to the United States Constitution provides: "A well regulated militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed."

the powers of the national government . . . ." In *Heller,* when considering whether any of its precedents challenged the conclusion it had reached about the meaning of the Second Amendment, the Court stated that its decisions in *Presser* v. *Illinois,* 116 U.S. 252, 265 (1886), and *Miller* v. *Texas,* 153 U.S. 535, 538 (1894), had "reaffirmed" after *Cruikshank* "that the Second Amendment applies only to the Federal Government." *Heller, supra* at 2813 n.23. *Heller* did not overrule these decisions.[4]

We recognize that each of the cited cases limiting the application of the Second Amendment to the Federal government preceded the Supreme Court's selective incorporation of some provisions of the Bill of Rights under the due process clause of the Fourteenth Amendment, and that each was decided without reference to or consideration of the requirements of substantive due process. See *National Rifle Ass'n of Am.* v. *Chicago,* 567 F.3d 856, 857 (7th Cir.), cert. granted sub nom. *McDonald* v. *Chicago,* 130 S. Ct. 48 (2009). Nonetheless, these cases are the law of the land until the Supreme Court decides otherwise, and we are therefore bound by them. See *State Oil Co.* v. *Khan,* 522 U.S. 3, 20 (1997) (Supreme Court alone has prerogative to overrule its own precedents); *Rodriguez de Quijas* v. *Shearson/ American Express, Inc.,* 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions").

The vast majority of courts considering this question since *Heller* was decided have adopted this principle of deference. See *National Rifle Ass'n of Am.* v. *Chicago, supra* at 857 (lawsuits dismissed against municipalities that banned possession of most handguns because Second Amendment not applicable to States); *Maloney* v. *Cuomo,* 554 F.3d 56, 58 (2d Cir. 2009) (per curiam) (settled law that Second Amendment only applies to limitations Federal government seeks to impose on individual

---

[4]The *Heller* Court stated that the question whether *United States* v. *Cruikshank,* 92 U.S. 542 (1875) (*Cruikshank*), remains a continuing bar against application of the Second Amendment to the States was "not presented" to the Court. *District of Columbia* v. *Heller,* 128 S. Ct. 2783, 2813 n.23 (2008) (*Heller*). Therefore, *Cruikshank*'s holding that the Second Amendment does not apply to the States has not been affected by the Court's decision in *Heller.*

right to keep and bear arms); *State* v. *Turnbull,* 766 N.W.2d 78, 80 (Minn. Ct. App. 2009) (Second Amendment not incorporated in due process clause and therefore not enforceable against States); *Crespo* v. *Crespo,* 408 N.J. Super. 25, 41 (App. Div. 2009) (in announcing individual right under Second Amendment, *Heller* Court did not alter view that Second Amendment poses no limits on States). But see *Nordyke* v. *King,* 563 F.3d 439, 457 (9th Cir.), reh'g granted, 575 F.3d 890 (9th Cir. 2009) ("Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments").

If the Second Amendment is not incorporated under the Fourteenth Amendment's guarantee of substantive due process and therefore does not apply to the States, the defendant's claim that the obligation safely to secure his firearm under G. L. c. 140, § 131L (*a*), unconstitutionally infringes on his right to keep and bear arms in his home for self-defense must fail. Under *Cruikshank,* the Second Amendment imposes no limitations on the ability of the Massachusetts Legislature to regulate the possession of firearms and ammunition.[5]

The judge's second erroneous premise was that the provisions of G. L. c. 140, § 131L (*a*), are indistinguishable from those held unconstitutional by the Supreme Court in *Heller.* General Laws c. 140, § 131L (*a*), provides:

> "It shall be unlawful to store or keep any firearm, rifle or shotgun . . . unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than

---

[5]The defendant concedes that G. L. c. 140, § 131L (*a*), is not unconstitutional under art. 17 of the Massachusetts Declaration of Rights, which provides: "The people have a right to keep and to bear arms for the common defence. And as, in time of peace, armies are dangerous to liberty, they ought not to be maintained without the consent of the legislature; and the military power shall always be held in an exact subordination to the civil authority, and be governed by it." We have held that art. 17 was intended to provide for the common defense and does not guarantee an individual right to keep and bear arms. *Commonwealth* v. *Davis,* 369 Mass. 886, 888 (1976). See *Chief of Police of Shelburne* v. *Moyer,* 16 Mass. App. Ct. 543, 547 (1983) ("There is no right under art. 17 . . . for a private citizen to keep and bear arms . . .").

the owner or other lawfully authorized user. For purposes of this section, such weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user."

Under this provision, an individual with a valid firearms identification card issued under G. L. c. 140, § 129C, is not obliged to secure or render inoperable a firearm while the individual carries it or while it remains otherwise under the individual's control. A gun owner may therefore carry or keep a loaded firearm under his or her control in his or her home without securing it with a trigger lock or comparable safety device. The gun owner's obligation to secure the firearm in accordance with the statute arises only when the firearm is stored or otherwise outside the owner's immediate control.[6]

In contrast, the comparable provision of the District of Columbia Code challenged in *Heller* required:

> "Except for law enforcement personnel described in § 7-2502.01(b)(1), each registrant shall keep any firearm in his possession unloaded and disassembled or bound by a trigger lock or similar device unless such firearm is kept at his place of business, or while being used for lawful recreational purposes within the District of Columbia."

D.C. Code § 7-2507.02 (2008). Under this provision, a person registered to keep a firearm (apart from law enforcement personnel) was prohibited in any circumstance from carrying or keeping a loaded firearm in his or her home. The ordinance prohibited a registered gun owner from keeping even an unloaded firearm in his or her home unless it was disassembled or rendered inoperable by a trigger lock or similar device. The Supreme Court ruled that the District of Columbia's requirement "that firearms in the home be rendered and kept inoperable at all times" made it "impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Heller, supra* at 2818. General Laws c. 140, § 131L (*a*), does

---

[6]This statutory obligation owed by one who keeps firearms in the home to secure those firearms safely is separate and distinct from the common-law duty of a home owner to ensure that the firearms stored on the property are properly secured when the home owner "allows unsupervised access to that property by a person known by her to have a history of violence and mental instability." *Jupin* v. *Kask*, 447 Mass. 141, 143 (2006).

not require that firearms in the home be rendered and kept inoperable at all times and does not prohibit a licensed gun owner from carrying a loaded firearm in the home; the statute therefore does not make it impossible for those persons licensed to possess firearms to rely on them for lawful self-defense.[7,8]

We conclude that the legal obligation safely to secure firearms in G. L. c. 140, § 131L (*a*), is not unconstitutional, that the motion to dismiss the count charging its violation was allowed in error, and that the defendant may face prosecution on this count.[9]

*Conclusion.* For the reasons stated above, the order allowing the motion to dismiss is reversed, the dismissal is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[7]We note that the Court in *Heller, supra* at 2820, declared that its analysis should not be taken to "suggest the invalidity of laws regulating the storage of firearms to prevent accidents." We do not, however, decide whether the defendant's alleged violation of G. L. c. 140, § 131L (*a*), could survive a motion to dismiss if the Second Amendment were made applicable to the States through incorporation under the Fourteenth Amendment's due process clause.

[8]We also note that, even if a firearm were secured in the manner required by G. L. c. 140, § 131L (*a*), a gun owner threatened in his or her home today would be able to fire the weapon in self-defense at least as quickly as would a gun owner in 1791, when the Second Amendment was adopted. At that time, laws were in effect requiring that gunpowder be stored separately from firearms, which meant that a law-abiding homeowner acting in self-defense would need time to load and fire a musket or flintlock pistol. See *Heller, supra* at 2849-2850 (Breyer, J., dissenting). A skilled soldier of that time using specially prepared cartridges required a minimum of fifteen to twenty seconds to load and fire a musket; a less skilled soldier could fire no more quickly than once per minute. Hicks, United States Military Shoulder Arms, 1795-1935, 1 Am. Military Hist. Found. 23, 30-31 (1937). A gun owner today could remove a firearm from a locked container or release a trigger lock more quickly than that.

[9]On appeal, the defendant for the first time argues that the count charging a violation of G. L. c. 140, § 131L (*a*), should be dismissed because his son was a "lawfully authorized user" under G. L. c. 140, § 131L (*a*). The defendant has waived this argument by not presenting it to the motion judge. See Mass. R. Crim. P. 13 (*a*) (2), as appearing in 442 Mass. 1516 (2004); G. L. c. 277, § 47A. The argument is also without merit, because the defendant does not argue that his son has a valid firearms identification card that would entitle him to possess a firearm in Massachusetts.