Fabricant, Judith, J.
INTRODUCTION
Defendants, each charged with unlawful possession of a firearm and related offenses, move to dismiss those indictments on second amendment grounds. For the reasons that will be explained, the motions will be denied.
BACKGROUND
Each of these two defendants is charged with assault by means of a dangerous weapon, a firearm, in violation of G.L.c. 265, §15B(b); possession of a firearm, in violation of G.L.c. 269, §10(a); possession of ammunition, in violation of G.L.c. 269, § 10(h); and carrying a loaded firearm, in violation of G.L.c. 269, §10(n). The charges arise from a shooting on February 11,2010, on Blue Hill Avenue in the Mattapan section of Boston. As of that date, defendant Jerrod Lee was seventeen years old, and was on juvenile probation, having been adjudicated delinquent based on the felony offenses of armed robbeiy and assault with a dangerous weapon. Defendant Randy Pizarro was eighteen years old, and had been adjudicated delinquent at age sixteen based on the felony offense of unlawful possession of a firearm. Neither defendant contends that he has ever applied for a firearm identification card (FID) or a license to carry a firearm. Each defendant moves to dismiss the possession and carrying charges on the ground that the statutes under which he is charged, and the related statutes éstablishing qualifications for firearms identification cards and licenses to carry firearms, G.L.c. 140, §§129B and 131, unconstitutionally infringe on his rights under the second amendment to the United States Constitution, as construed in District of Columbia v. Heller, 554 U.S. 570 (2008), and McDonald v. Chicago, 130 S.Ct. 3020 (2010). The Court will deny the motions.
DISCUSSION
The statutory provisions under which the defendants are charged prohibit possession of a firearm or ammunition without an FID card and carrying a loaded firearm without a license to carry. G.L.c. 269, §10(a), (h), and (n). General Laws c. 140, §§129B and 131 establish the procedures and criteria for obtaining an FID or license to carry. Under G.L.c. 140, §129B, to obtain an FID card one must apply to the local licensing authority (generally the chief of police), who “shall” issue the card unless the applicant is disqualified on any of a number of grounds set forth in the statute. Two disqualifications are relevant here: (1) previous conviction of specified criminal offenses, including any felony and any violation of any law regulating firearms, or adjudication of delinquency based on such offenses[1] and (2) age less than 18 years, in the absence of permission from a parent or guardian.[2] Under G.L.c. 140, §131(d), a person seeking a license to carry may apply therefor to the licensing authoriiy (again, generally the chief of police), who may issue such a license “if it appears that the applicant is a suitable person,” unless the applicant is disqualified on specified grounds. The grounds set forth include two relevant here: (1) conviction of the same offenses set forth in c. 140, §129B, .or adjudication of delinquency based on such offenses; and (2) age less than 21 years.
In District of Columbia v. Heller, 554 U.S. at 635-36, the Supreme Court struck down a Washington, D.C., ordinance that prohibited all possession of handguns, including in one’s own home. Heller established that the second amendment creates an individual right to bear arms. It left open, however, whether that right limits the power of the states as well as the federal government. See Commonwealth v. Runyan, 456 Mass. 230, 234 (2010). The Supreme Court resolved that issue in McDonald v. Chicago, 130 S.Ct. at 3034, holding that the second amendment does apply to the states; on that basis, the Supreme Court struck down local ordinances in Illinois that effectively banned all possession of handguns. See Commonwealth v. Loadholt, 456 Mass. 411, 427-29, vacated and remanded, 131 S.Ct. 459 (2010) (for further consideration in light of McDonald).
It is thus established that states and localities may not prohibit all possession of handguns. It is equally clear, however, that states may impose appropriate regulations on gun ownership. “Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-centuiy cases, commentators and courts routinely explained that the right was not a right to keep and carry any *74 weapon whatsoever in any manner whatsoever and for whatever purpose.” Heller, 554 U.S. at 626. The Supreme Court has not defined the scope of permissible regulation of firearms. Nor has it identified the level of scrutiny to be applied to such regulations. The Court has made clear, however, that nothing in these decisions “should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ... , or laws forbidding the carrying of firearms in sensitive places, ... or laws imposing conditions and qualifications on the commercial sale of arms.” McDonald, 130 S.Ct. 3047, quoting Heller, 554 U.S. at 627. Nor do these decisions suggest any constitutional flaw in licensing and registration requirements; indeed, to the contrary, the relief issued in Heller was an order that the plaintiff, unless disqualified, be permitted to register his handgun and issued a license to carry it in his home. Heller, 554 U.S. at 635.
The Massachusetts statutory scheme under which these defendants are charged does not prohibit all gun possession, as did the ordinances in Heller and McDonald. Rather, Massachusetts requires a license, disqualifies specified categories of persons from obtaining licenses, and, with respect to carrying, grants a measure of discretion to the licensing authority to evaluate the suitability of an applicant who is not disqualified. Defendants argue that these statutory provisions should be evaluated under a strict scrutiny standard, and cannot survive that standard. In particular, they point to the prohibition on issuance of a license to carry to persons under age 21, the requirement of parental consent to an FID card for persons under 18, and the grant of discretionary power to the licensing authority to deny a license to carry to a person not otherwise disqualified.
“From an early day it has been an established principle in this Commonwealth that only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duly of passing upon the validity of the acts of a coordinate branch of the government.” Kaplan v. Bowker, 333 Mass. 455, 459 (1956). “Only one whose rights are impaired by a statute can raise the question of its constitutionality, and he can object to the statute only as applied to him.” Commonwealth v. Gordon, 354 Mass. 722, 725 (1968); quoting Massachusetts Comma. Against Discrimination v. Colangelo, 344 Mass. 387, 390 (1962); see United States v. Raines, 362 U.S. 17, 21 (1960) (“one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional”). A licensing scheme, unless void on its face, imposes legal harm only on one who applies for a license and is unlawfully denied. Commonwealth v. Gordon, supra.
Neither of these defendants suggests that he has ever applied for either an FID card or a license to cany. Moreover, it is apparent that, were they to apply, they would properly be denied, since both are disqualified based on their criminal histories, a disqualification that the Supreme Court has expressly approved.[3] Thus, unless the statutory licensing scheme is void on its face, neither of these defendants has suffered any legal harm, and neither has standing to challenge the statutes.
Outside the first amendment area, a statute is void on its face only if would be unconstitutional in any conceivable application. United States v. Salerno, 481 U.S. 739, 745 (1987) (“A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid”). Here, no matter how limited the states’ power to regulate firearms may ultimately turn out to be, the guidance provided thus far by the Supreme Court leaves no doubt that these statutes do not fall into that category, since they are constitutional at least insofar as they prohibit possession and carrying by convicted felons. Thus, whatever the constitutional merits of the age 21 requirement for a license to carry, or of the discretion conferred on licensing authorities, the statutory scheme is neither unconstitutional on its face, nor unconstitutional as applied to these two defendants.
CONCLUSION AND ORDER
For the reasons stated, the Defendants’ Motions to Dismiss are DENIED.

 Disqualification on this ground abates five years after release from confinement, probation or parole for such conviction or adjudication.

The statute disqualifies anyone under age 15, regardless of parental consent. At argument on the motions, counsel informed the Court that a Boston city ordinance prohibits issuance of an FID card to any person under age 21. The Court has not been provided with a copy of such ordinance, nor do the motions or memoranda provide a citation.

Jerrod Lee would also have been disqualified, as of the date of the event in issue, based on his minority. That disqualification would likely withstand even strict scrutiny, since “[t]he government has a . . . compelling interest in ‘protect[ingI children from actual or potential harm,’ an interest that often justifies restrictions that could not be sustained when applied to the fundamental rights of adults.” Commonwealth v. Weston W., 455 Mass. 24, 34 (2009), quoting Blixt v. Blixt, 437 Mass. 649, 656 (2002). See Citizens United v. FEC, 130 S.Ct. 876, 882 (2010) (“Laws . . . subject to strict scrutiny require! 1 the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest”).