## COMMONWEALTH *vs.* EUSTACE PATTERSON.

No. 09-P-2346.

Norfolk. October 27, 2010. - April 25, 2011.

Present: KANTROWITZ, FECTEAU, & WOLOHOJIAN, JJ.

*Firearms. Constitutional Law,* Right to bear arms, Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses. *Evidence,* Spontaneous utterance. *Words,* "Control."

This court concluded that G. L. c. 140, § 131L(*a*), the firearm storage statute, does not, on its face, unconstitutionally interfere with an individual's ability to rely on a gun for self-defense, and as applied to a criminal complaint charging the defendant with improper storage of a firearm, nothing in the record suggested that the statute's requirements interfered to any degree with the defendant's right to self-defense. [318]

At the trial of a criminal complaint charging the defendant with improper storage of a firearm, sufficient evidence existed to permit a jury to find beyond a reasonable doubt that the gun at issue was not within the defendant's control, where the gun was stored in the pocket of a jacket hanging in an upstairs closet of a residence while the defendant was downstairs, the gun was out of its holster, and children were present, one of whom was at times closer to the gun than the defendant. [318-320]

At a criminal trial, no violation of the defendant's right to confront witnesses against him arose from the introduction in evidence of a child's statement, where the statement was made spontaneously, without police questioning, as officers walked into a volatile and unstable scene of domestic disturbance; where there was nothing to suggest that the statement was made for any purpose other than to secure aid, let alone that the five year old child had in mind that the statement would or could be used to prove some fact at a future criminal trial; and where, even assuming arguendo that the statement was testimonial, any error in its admission was harmless beyond a reasonable doubt, in that, with respect to one charge, the statement was duplicative of the defendant's admission, and in that, with respect to other charges on which the statement directly bore, the defendant was acquitted. [320-321]

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on January 28, 2009.

The case was tried before *Richard D. Savignano,* J.

*Francis M. Doran, Jr.,* for the defendant.

*Varsha Kukafka*, Assistant District Attorney, for the Commonwealth.

WOLOHOJIAN, J. Responding to an abandoned 911 telephone call,[1] police went to 48 Forest Street in Franklin where, as they approached, they saw a scared and crying five year old girl, who was repeatedly yelling, "[N]o police." Near her was her mother, who appeared shaken and nervous. The police entered the residence and saw an empty gun holster on the kitchen floor. At that point, the defendant entered the kitchen from the living room and the child said, "He pushed Mommy into the wall. He had a gun." The defendant identified himself as a police officer and stated that he was unarmed. One of the responding police officers ushered him outside. Another officer, accompanied by the mother, the girl, and her seven year old brother, then went upstairs. In the hall, the officer observed a foot-wide indentation in the wall about three feet up from the floor. In the pocket of a jacket hanging in an upstairs bedroom closet, the officer located a Smith & Wesson .38 caliber handgun. The unloaded gun did not have a trigger lock and was not secured in a locked container. Also in the same pocket was hollow point .38 caliber ammunition.

The defendant was convicted after a jury trial of improper storage of a firearm, G. L. c. 140, § 131L(*a*) (firearm storage statute or statute).[2] On appeal, he (a) challenges the constitutionality of the firearm storage statute; (b) contends that there was insufficient evidence that he did not "control" the firearm for purposes of the statute; and (c) contends that admission of the child's statement without her live testimony at trial violated his right of confrontation under the Sixth Amendment to the United States Constitution. We affirm.

---

[1] No information was conveyed before the caller hung up, and the call thus generated especial alarm.

[2] General Laws, c. 140, § 131L(*a*), inserted by St. 1998, c. 180, § 47, states: "It shall be unlawful to store or keep any firearm, rifle or shotgun including, but not limited to, large capacity weapons, or machine gun in any place unless such weapon is secured in a locked container or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user. For purposes of this section, such weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user."

1. *Firearm storage statute.* Relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), the defendant argues that our firearm storage statute violates the Second Amendment to the United States Constitution.[3] To the extent that the defendant challenges the constitutionality of the statute on its face, his argument fails in light of *Commonwealth* v. *Runyan*, 456 Mass. 230 (2010). *Runyan* concluded that our firearm storage statute meaningfully and substantially differs from the statutory provision at issue in *Heller* because it does not require an individual "to secure or render inoperable a firearm while the individual carries it or while it remains otherwise under the individual's control." *Runyan, supra* at 236. As a result, our statute does not, on its face, unconstitutionally interfere with an individual's ability to rely on a gun for lawful self-defense. *Id.* at 237.

What remains of the defendant's Second Amendment challenge, therefore, is to determine whether any constitutional concern is raised by the statute's application to the defendant on the facts of this case. We are confident that no such concern exists. There is nothing in the record to suggest that the statute's requirements interfered to any degree with the defendant's right to lawful self-defense. See *Heller, supra* at 628. To the contrary, the evidence showed that the defendant had stored the gun in a closet upstairs while he was downstairs without immediate access to it. The statute's storage requirements placed no meaningful restraint on the defendant's ability to use the gun in lawful self-defense if for no other reason than that he himself placed it where it could not be quickly reached.

2. *Sufficiency of evidence of "control".* The firearm storage statute applies to weapons when they are neither carried nor under the control of their owner or other authorized user. See note 2, *supra*. The defendant does not contend that he was carrying the gun within the meaning of the statute at the time of the offense.[4] He does, however, argue that the Commonwealth failed to prove that the gun was not under his "control." We must assess, therefore, the meaning of that term for purposes of the gun storage statute.

---

[3]After this appeal was briefed, the United States Supreme Court held that the Second Amendment applies to the States. See *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010).

[4]Nor could such an argument credibly be made on the facts of this case.

"Control" is not defined by the statute, and we have found no case construing the term in this context. Ordinary rules of statutory construction lead to the conclusion that "control" is not synonymous with the term "carried." Otherwise, there would have been no need for the Legislature to have used both terms in the statute. See, e.g., *Kobrin* v. *Gastfriend*, 443 Mass. 327, 332 (2005), quoting from *Commonwealth* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967) ("[n]one of the words of a statute is to be regarded as superfluous"). "Carried" is also undefined by the statute, but at a minimum it requires actual physical possession. What else might be required is a question left for another day, although we note that in the related context of G. L. c. 269, § 10(*a*), "carrying" requires nontemporary physical possession together with movement. See *Commonwealth* v. *Osborne*, 5 Mass. App. Ct. 657, 658-659 (1977).

While a gun for purposes of the firearm storage statute need not necessarily be in the actual physical possession of its owner or authorized user in order to be under that individual's "control," it must be readily at hand. The statute is part of an over-all scheme of gun control legislation designed "to prevent the temptation and the ability to use firearms to inflict harm, be it negligently or intentionally, on another or on oneself." *Commonwealth* v. *Lee*, 10 Mass. App. Ct. 518, 523 (1980). The firearm storage statute itself "is illustrative of the societal concern with weapons reaching the hands of unauthorized users." *Jupin* v. *Kask*, 447 Mass. 141, 154 (2006). Understanding that the purpose of the statute is to guard against the use of firearms by unauthorized, incompetent, or irresponsible persons, it becomes clear that a firearm is within the "control" of its owner or authorized user only when that person has it sufficiently nearby to prevent immediately its unauthorized use.[5]

Of course, the determination whether a particular firearm is

---

[5]In this case, the jury were instructed that "control" for purposes of the statute could be satisfied by showing constructive possession. The judge instructed: "An object is considered to be in a person's control or dominion, without physical custody, if they have knowledge of the object; if they have the ability to exercise control or dominion over the object . . . ; and thirdly, that they have the intent to exercise such dominion or control over the [object]." This instruction should not have been given, but the error was harmless, as the instruction worked to the defendant's benefit.

under an individual's control will depend on the facts and circumstances of any given case. Among other things, consideration should be given to the firearm's location, its proximity to its authorized user or owner, and that person's ability to reach immediately the gun. It is clear to us that the Commonwealth satisfied its burden of proving beyond a reasonable doubt that the gun was not under the defendant's control in this case. The gun was stored in the pocket of a jacket hanging in an upstairs closet. The defendant was downstairs. The gun was out of its holster, which was lying on the kitchen floor. Children were present, including a young boy who at times was closer to the gun than was the defendant. The jury had more than sufficient evidence upon which to find that the gun was not within the defendant's control.

3. *Sixth Amendment.* The defendant argues that the admission of the child's statement, "He pushed Mommy into the wall. He had a gun," violated his right to confrontation under the Sixth Amendment.[6] The confrontation clause applies to witnesses who "bear testimony" against the accused, regardless of whether their statements are admissible under the rules of evidence.[7] *Crawford* v. *Washington,* 541 U.S. 36, 50-51 (2004). " 'Testimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " *Id.* at 51, quoting from 2 N. Webster, An American Dictionary of the English Language (1828).

The child's statement here was made spontaneously, without police questioning, as the officers walked into a volatile and unstable scene of domestic disturbance. There is nothing to suggest that the statement was made for any purpose other than to secure aid, let alone that the five year old child had in mind that the statement would or could be used to prove some fact at a future criminal trial. The statement, accordingly, was not testimonial for purposes of the Sixth Amendment. See *Davis* v. *Washington,* 547 U.S. 813, 822 (2006) ("[s]tatements are nontestimonial when made in the course of police interrogation

---

[6]The statement was introduced through a police officer; the child did not testify.

[7]We are persuaded that the statement was admissible under the excited utterance exception to the hearsay rule.

under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency"); *Michigan* v. *Bryant*, 131 S. Ct. 1143, 1156 (2011) ("To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties" [citation omitted]); *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 9-10 (2005), cert. denied, 548 U.S. 926 (2006) (statements are not "testimonial" if made in response to questioning "to secure a volatile scene or to establish the need for or provide medical care" [footnote omitted]).

We note further that, even assuming arguendo that the statement was testimonial, any error in its admission was harmless beyond a reasonable doubt. The defendant himself admitted to owning the gun; the child's statement added nothing else that bore on the charge of violating the firearm storage statute. And, although the statement did bear on the crimes of assault and battery, G. L. c. 265, § 13A(*a*), and witness intimidation, G. L. c. 268, § 13B, the defendant was acquitted of both charges.

For the reasons set out above, the judgment is affirmed.

*So ordered.*