NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-518

COMMONWEALTH

vs.

NELSON C. MITCHELL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant, Nelson C. Mitchell, was convicted of improper storage of a firearm in violation of G. L. c. 140, § 131L (a) (firearms storage statute).[1]  On appeal, the defendant (1) argues that the evidence was insufficient to support the conviction, and (2) asserts facial and as-applied challenges to the constitutionality of the firearms storage statute.  We affirm.

Background.  1.  Trial.  The jury could have found the following facts.  Between 9 P.M. and 10 P.M. on June 19, 2022,

---

[1] The Commonwealth entered a nolle prosequi on one count of assault and battery, G. L. c. 265, § 13A (a), and one count of assault and battery on a household or family member, G. L. c. 265, § 13M (a).

Sergeant Michael Placanico and Officer Guillermo Burgos of the Springfield police department responded to a call about a disturbance at the defendant's home. On arrival, Placanico and Burgos entered the home through the unlocked front door and spoke with the defendant's wife and daughter in the living room. Burgos found the defendant in the backyard, detained him, and placed him in the back of a police cruiser. A records search revealed that the defendant had an active license to carry (LTC) and a valid firearms identification (FID) card, and that a shotgun was expected to be in the home. When Burgos asked the defendant to tell him the location of the shotgun, the defendant refused.

The officers then returned to the living room to speak with the wife and the daughter. During this conversation, the wife walked out of the living room, through the kitchen, and into a bedroom, out of the officers' sight. After two or three minutes, Placanico followed the wife into the bedroom and saw her standing beside the bed, on which there was a gun bag containing a shotgun. When Placanico entered the room, the wife was not holding anything. Neither the shotgun nor the gun bag had a lock attached or nearby. Placanico noted that the bedroom was small and contained only a bed and a dresser. Similarly, Burgos saw a bed, a couple of corner bookshelves, clothing, and the gun bag. Neither Placanico nor Burgos saw a gun safe in the

2

bedroom or any locking mechanism nearby.  Placanico testified

that there was nothing in the gun bag other than the shotgun.

Placanico "cleared" the shotgun, ensured that it was safe,

placed it back into the gun bag, and brought it to his police

cruiser.[2]

2.  Motion to dismiss.  Before trial, the defendant filed a

motion to dismiss the charge of improper storage of a firearm on

the ground that the firearms storage statute infringed his right

under the Second Amendment to the United States Constitution to

possess a shotgun in his home for the purpose of immediate self-

defense.  Following an evidentiary hearing, the motion judge

denied the motion in a well-reasoned written decision.[3]  The

motion judge determined that the defendant had raised only an

as-applied challenge and concluded that the firearms storage

statute was not unconstitutional because the Second Amendment

did not protect his conduct.  As the motion judge explained, the

Second Amendment protects "an authorized gun owner's ability to

possess a firearm in the home."  Here, however, "the defendant

_____

[2] The police officers' interactions with the wife were captured on their body-worn camera footage, which was entered into evidence.

[3] The motion judge was not the trial judge.

3

was not in possession or control of the shotgun that was in the house while he was intoxicated in the backyard."[4]

Discussion. 1. Sufficiency of the evidence. The defendant contends that there was insufficient evidence of improper storage of a firearm. In determining whether the evidence was sufficient to sustain a conviction, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). "A conviction may rest exclusively on circumstantial evidence, and, in evaluating that evidence, we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Jones, 477 Mass. 307, 316 (2017). "Inferences 'need only be reasonable and possible and need not be necessary or inescapable'" (citation omitted). Commonwealth v. Gomez, 495 Mass. 688, 693 (2025).

"[T]o prove the offense of improper storage of a firearm, the Commonwealth must demonstrate that the defendant failed to [store or] keep the firearm 'secured in a locked container' or 'equipped with a tamper-resistant mechanical lock or other safety device,'" Commonwealth v. Lojko, 77 Mass. App. Ct. 82,

---

[4] The jury did not hear testimony about the defendant's intoxication.

4

83-84 (2010), quoting G. L. c. 140, § 131L (a), "properly engaged so as to render such firearm inoperable by any person other than the owner or other lawfully authorized user." G. L. c. 140, § 131L (a). "The gun owner's obligation to secure the firearm in accordance with the statute arises only when the firearm is stored or otherwise outside the owner's immediate control." Commonwealth v. Runyan, 456 Mass. 230, 236 (2010).[5]

The defendant asserts that the Commonwealth did not meet its burden of proof because his wife, who also had valid LTC and FID cards, had control of the shotgun when she was in the bedroom before she presented it to the responding officers. We are not persuaded.

"[A] firearm is within the 'control' of its owner or authorized user only when that person has it sufficiently nearby to prevent immediately its unauthorized use." Commonwealth v. Patterson, 79 Mass. App. Ct. 316, 319 (2011). Here, a rational trier of fact could reasonably infer that the shotgun was not secured and was not under the wife's control when the police arrived. The wife spoke with Placanico in the living room for

---

[5] The record belies the defendant's contention that the only evidence of ownership was "the prosecutor's objectionable leading question" regarding the results of the records query. The parties jointly stipulated that the defendant legally purchased a shotgun bearing a specified serial number, and the Commonwealth introduced the report identifying the shotgun confiscated from the defendant's home with a matching serial number.

"[a] few minutes," and then traveled through two rooms from the living room to the bedroom. After she was out of his sight for two to three minutes, Placanico followed the wife into the bedroom and observed her standing at the bed, with a gun bag that contained the shotgun on the bed and no other items. Both police officers observed the room to contain the bed, clothing, and a dresser or cabinet, but no gun safe or other securing container. See Commonwealth v. Reyes, 464 Mass. 245, 253-254 (2013) (listing safes, weapon boxes, locked cabinets, gun cases, lock boxes, and soft gun cases secured with padlocks as examples of statutorily acceptable secured containers). The fact that the wife was alone in the bedroom for only two to three minutes coupled with the absence of a gun safe or any visible locking mechanism supports a reasonable inference that the shotgun was not properly secured while it was unattended in the bedroom and outside of the wife's control. Moreover, after the officers confirmed that the defendant had active LTC and FID cards, and that he owned a shotgun, they asked the defendant about its location, and he refused to answer, thereby permitting an inference that he knew the shotgun was not properly stored. See Commonwealth v. Swartz, 343 Mass. 709, 713 (1962) (while not conclusive, consciousness of guilt may combine with other

6

evidence to support guilty finding).[6]  Accordingly, the evidence

suffced to prove beyond a reasonable doubt that the defendant

improperly stored his shotgun.

2.  Constitutional challenges.  On appeal, the defendant

asserts both a facial challenge and an as-applied challenge to

the firearms storage statute.  As to the former, he argues that

the statute does not comport with the nation's history and

tradition of firearm regulation.  See New York State Rifle &

Pistol Ass'n v. Bruen, 597 U.S. 1, 24 (2022) (Bruen) (applying

text and history test to challenged regulation covered by Second

Amendment).  As to the latter, he argues that the statute unduly

burdened his rights under the Second Amendment "to maintain a

firearm at the ready in his home for self-defense."  However, at

oral argument, the defendant suggested that he agreed with the

Commonwealth that the panel of this court was precluded from

reaching either issue given the Supreme Judicial Court's

decisions in Reyes, 464 Mass. at 257, and Commonwealth v.

McGowan, 464 Mass. 232, 244 (2013).  Although he preserved the

---

[6] Evidence of the defendant's refusal to provide the location of the shotgun was admitted over his objection, and subject to a humane practice instruction regarding the voluntariness of the statement.  The defendant does not challenge the statement's admissibility on appeal.  Regardless of whether the statement was properly admitted, we may consider this evidence on the issue of sufficiency.  See Commonwealth v. Sepheus, 468 Mass. 160, 164 (2014); Commonwealth v. Farnsworth, 76 Mass. App. Ct. 87, 98 (2010).

constitutional arguments, the defendant asked us to consider only his argument concerning the sufficiency of the evidence. Without accepting the proposition that we cannot reach the question whether McGowan and Reyes are consistent with the United States Supreme Court's subsequent decision in Bruen, and noting that the defendant's facial challenge is not properly before us in any event, see Commonwealth v. Hendricks, 452 Mass. 97, 98 n.1 (2008) (facial challenge to constitutionality of statute may not be asserted for first time on appeal); Commonwealth v. Chou, 433 Mass. 229, 237-238 (2001) (same), we accept the defendant's invitation not to address his constitutional claims.[7]

Judgment affirmed.

By the Court (Blake, C.J.,
  Vuono, Meade, Massing &
  Allen, JJ.[8]),

Clerk

Entered:  September 15, 2025.

---

[7] To the extent the defendant asks us to interpret the firearms storage statute to be inapplicable to licensed gun owners whenever they are inside the home or within its curtilage, we decline to do so.  Such an expansive reading contravenes the statutory requirement that the firearm be under the owner or authorized user's immediate control, as discussed supra.  See Patterson, 79 Mass. App. Ct. at 319.

[8] The panelists are listed in order of seniority.