Commonwealth *vs.* Amaury Reyes.

Essex. October 1, 2012. - January 29, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Firearms. Constitutional Law,* Vagueness of statute, Right to bear arms. *Due Process of Law,* Vagueness of statute. *Practice, Criminal,* Directed verdict, Instructions to jury. *Words,* "Secured," "Locked container."

This court concluded that G. L. c. 140, § 131L (*a*) and (*b*), the firearm storage statute, was not unconstitutionally vague, in that the text, legislative history, related statutory and regulatory provisions, and other secondary materials establish a common understanding and practice regarding the secure storage of firearms in locked containers, against which to measure conduct proscribed under the statute [248-254]; further, this court concluded that a locked motor vehicle itself could not, as a matter of law, constitute a securely locked container [254-255], but that the adequacy under the storage statute of a locked glove compartment in a locked motor vehicle was a question of fact properly decided by the fact finder at trial [255-256].

This court concluded that the requirement of G. L. c. 140, § 131L (*a*) and (*b*), the firearm storage statute, for further locking mechanisms or security measures on a firearm already stored in a locked motor vehicle did not unconstitutionally infringe on the right to bear arms for self-defense under the Second Amendment to the United States Constitution, given that the storage statute only imposes storage restrictions where the firearm is not within the gun owner's possession or control. [256-257]

This court concluded that G. L. c. 140, § 131C (*a*), the firearm carrying statute, does not apply once a person leaves a motor vehicle and a firearm in it; consequently, at the trial of a criminal complaint charging improper carrying of a firearm arising from the defendant's having left a firearm in his locked motor vehicle, the evidence was insufficient as a matter of law to sustain the defendant's conviction. [257-258]

At the trial of a criminal complaint charging unlawfully storing a firearm, evidence from which the jury properly could have concluded that the defendant stored a loaded firearm in an unlocked container within a motor vehicle was sufficient to support his conviction [258-259]; however, a new trial was required where the judge's failure to provide the jury with any guidance regarding what qualifies as a securely locked container for purposes of the storage statute could not be said to have been harmless error [259-260].

Complaint received and sworn to in the Salem Division of the District Court Department on April 26, 2010.

The case was tried before *Matthew J. Nestor*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael Anton Laurano* for the defendant.

*Marcia H. Slingerland*, Assistant District Attorney, for the Commonwealth.

*Keith G. Langer*, for Commonwealth Second Amendment, Inc., amicus curiae, submitted a brief.

CORDY, J. The defendant, Amaury Reyes, was convicted of improperly carrying a firearm in a motor vehicle in violation of G. L. c. 140, § 131C (*a*) (carrying statute), and unlawfully storing a firearm (after leaving it in his motor vehicle) in violation of G. L. c. 140, § 131L (*a*) and (*b*) (storage statute). On appeal, the defendant argues that the storage statute is unconstitutionally vague in violation of his right to due process of law. He also contends that if the storage statute requires that a firearm stored in a locked motor vehicle be rendered further inoperable by locking it in an additional container or through the use of a tamper-resistant trigger lock, it unlawfully hinders his right to use the firearm in self-defense. Additionally, the defendant posits that there was insufficient evidence at trial to support his convictions under both the storage and carrying statutes. Finally, he asserts that the judge's jury instruction on the elements of the storage statute was deficient in that it failed to provide guidance on what qualifies as a "locked container." Based on these errors, the defendant asserts that he is entitled to either directed verdicts in his favor or a new trial.

We conclude that the defendant's arguments with respect to the constitutionality of the storage statute are without merit: the statute is neither impermissibly vague nor violative of his right to self-defense under the Second Amendment to the United States Constitution. We also conclude, however, that the evidence was insufficient to support the defendant's conviction under the carrying statute and he is entitled to a directed verdict of not guilty on that charge. Further, because the judge did not adequately instruct the jury regarding what qualifies as a "locked container," we reverse his conviction under the storage statute and remand the case to the District Court for a new trial with

directions to the trial judge to instruct the jury in a manner consistent with this opinion.

1. *Background.* The jury could have found the following facts.[1] The defendant was a correctional officer at the Essex County house of correction in Middleton. He had a class A license permitting him to carry a firearm for all lawful purposes. See G. L. c. 140, § 131 (*a*). On April 10, 2010, the defendant drove from his home to work, during which time he carried his personal firearm with him in a holster. There was no one else in the automobile when he drove to work. When the defendant arrived at the house of correction, he parked his motor vehicle in the employee parking lot directly in front of the entrance to the facility. He proceeded to an exterior window where one could obtain a gun locker key for the storage of his firearm during his work shift. All the lockers were full. He returned to his vehicle, removed the firearm and holster from his person, placed them in the glove box, and locked the vehicle.[2]

On returning to the facility, the defendant was confronted by internal affairs officers, who asked if they could search his vehicle. The defendant agreed to the search. The officers asked the defendant whether there was anything in his vehicle about which they should be concerned. The defendant replied that his firearm was in the glove box of his vehicle. They asked if the firearm was outfitted with a cable locking device. The defendant replied that it was not. The officers and the defendant then walked back to the parked vehicle where the defendant unlocked it with a remote opener. The officers entered the vehicle from the passenger side, opened the glove box, and retrieved the firearm in its holster. The firearm contained a loaded magazine, but no round in the chamber.

On April 26, 2010, complaints issued from the District Court, charging the defendant with violating the carrying and storage statutes. The defendant filed a motion to dismiss on April 15,

---

[1]Given that no transcript or audio recording exists of the one-day jury trial conducted on April 26, 2011, we take as true those facts presented in the agreed statement submitted by the parties pursuant to Mass. R. A. P. 8 (d), as appearing in 378 Mass. 932 (1979).

[2]The defendant testified at trial that he also locked the glove box. The officers who seized the firearm from the glove box testified that it was unlocked.

2011. The motion was heard and denied immediately prior to the defendant's jury trial on April 26, 2011. At the close of the Commonwealth's case, the defendant moved for required findings of not guilty. His motion was denied. Thereafter, the jury returned guilty verdicts on both charges. The defendant filed a timely notice of appeal. We transferred the defendant's appeal to this court on our own motion.[3]

2. *Discussion.* a. *Void for vagueness.* The storage statute provides:

> "*It shall be unlawful to store or keep any firearm,* rifle or shotgun including, but not limited to, large capacity weapons, or machine gun in any place *unless such weapon is secured in a locked container* or equipped with a tamper-resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user. For purposes of this section, such weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user." (Emphasis added.)

The defendant argues that the statute fails to make clear what qualifies as being "secured in a locked container," leaving gun owners without guidance on how to store their firearms properly and law enforcement officials without criteria for knowing when the statute has been violated. Consequently, it is void for vagueness. We are not persuaded. The text, legislative history, related statutory and regulatory provisions, and other secondary materials reflect a common understanding at least as to a core set of containers that when used properly ensure gun owners that they are properly storing their firearms.

The principles of the vagueness doctrine are well settled in our law. A basic tenet of due process requires that a criminal statute be sufficiently clear to give notice of the prohibited conduct. See *Commonwealth* v. *Bohmer*, 374 Mass. 368, 371-372 (1978). "Penal statutes must 'define the criminal offense with sufficient definitiveness that ordinary people can understand

---

[3]We acknowledge the amicus brief of Commonwealth Second Amendment, Inc.

what conduct is prohibited.' " *Commonwealth* v. *Zubiel*, 456 Mass. 27, 30 (2010), quoting *Commonwealth* v. *Twitchell*, 416 Mass. 114, 123 (1993).

Due process also mandates that no statute have such a standardless sweep that arbitrary and discriminatory enforcement by the police and the courts is permitted. See *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972); *Commonwealth* v. *A Juvenile*, 368 Mass. 580, 595 n.15 (1975). "It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Smith* v. *Goguen*, 415 U.S. 566, 573 n.9 (1974), quoting *United States* v. *Reese*, 92 U.S. 214, 221 (1875).

Proscribed conduct, however, is not always capable of precise legal definition. *Jaquith* v. *Commonwealth*, 331 Mass. 439, 442 (1954). Accordingly, legislative language need not be afforded "mathematical precision" in order to pass constitutional muster. *Commonwealth* v. *Bohmer, supra* at 372. See *Grayned* v. *Rockford, supra* at 110. A statute is not vague "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). Its language will be adequate if it "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." *Commonwealth* v. *Adams*, 389 Mass. 265, 270 (1983), quoting *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971). Uncertainty as to whether marginal offenses are included within the coverage of a statute does not render it unconstitutional if its scope is substantially clear. See *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers*, 413 U.S. 548, 579 (1973); *Commonwealth* v. *Jarrett, supra*. Moreover, a law is not vague if its meaning is ascertainable by reference to similar or related statutes, and "even a vague statute may be made constitutionally definite by giving it a reasonable construction." *Commonwealth* v. *Kenney*, 449 Mass. 840, 851 (2007), quoting *Commonwealth* v. *Arthur*, 420 Mass. 535, 539 (1995).

We begin by acknowledging that the term "secured in a locked container" is not further explicated by the statute. However, even in the absence of further definition, the statute can be

"interpreted according to the intent of the Legislature ascertained from all [the statute's] words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

Massachusetts courts have consistently noted that the underlying purpose of firearms control legislation is to assuage "the societal concern with weapons reaching the hands of unauthorized users," *Jupin* v. *Kask*, 447 Mass. 141, 154 (2006), and "to prevent the temptation and the ability to use firearms to inflict harm, be it negligently or intentionally, on another or on oneself." *Commonwealth* v. *Lee*, 10 Mass. App. Ct. 518, 523 (1980). See *Ruggiero* v. *Police Comm'r of Boston*, 18 Mass. App. Ct. 256, 258 (1984) ("goal of firearms control legislation is to limit access to deadly weapons by irresponsible persons"). The Legislature has attempted to effectuate this purpose through the enactment of a wide ranging, but coherent, regulatory scheme that includes licensing requirements for the sale and possession of firearms and ammunition. *Id.* at 258-259 & n.3 (collecting statutory provisions regulating firearms).

The storage statute, enacted in 1998,[4] plays an important role in this regulatory scheme. Its legislative history leaves no doubt that the measure was intended to prevent accidental injuries and deaths resulting from firearms falling into the hands of children[5]

---

[4]General Laws c. 140, § 131L, inserted by St. 1998, c. 180. The legislative vehicle for the current gun control law was 1997 Senate Doc. No. 1985, "An Act relative to certain prohibited semiautomatic weapons and large capacity ammunition magazines" (reprint of 1997 Senate Doc. No. 148, as amended, "An Act relative to assault weapons"). The storage provision was added as an amendment during the House floor debate on June 22, 1998. State House News Service (June 23, 1998). See 1997-1998 House J. 1982-1983. See also 1998 House Doc. No. 5636; 1998 House Doc. No. 5622.

[5]Although G. L. c. 140, § 131L (*a*), protects all unauthorized users from the negligent storage of firearms, rifles, or shotguns, G. L. c. 140, § 131L (*c*)-(*e*), sets forth increased penalties for the negligent storage of rifles and shotguns in places where persons under the age of eighteen years are likely to have access to them. These subsections highlight the Legislature's specific interest in protecting children.

and other unauthorized users, by criminalizing negligent storage.[6] *Commonwealth* v. *Patterson*, 79 Mass. App. Ct. 316, 319 (2011) (purpose of storage statute is to guard against use of firearms by "unauthorized, incompetent, or irresponsible persons"). In furtherance of its purpose, the storage statute requires that gun owners utilize one of two lawful and comparable storage alternatives when firearms are not in their physical possession. A gun owner can comply with the statute by making the firearm mechanically inoperable through the use of a tamper-resistant mechanical lock, or by restricting physical access to the firearm by securing it in a locked container sufficient to keep it out of the hands of an unauthorized person.

In light of its purpose, we discern significance in the Legislature's use of the word "secured" (rather than "stored" or "placed") as it relates to "locked container." That is, in order to prevent children and other unauthorized persons from gaining access to firearms and harming themselves or others, the "locked container" must make the firearm "secure."[7] See

[6]See State House News Service (June 23, 1998) (statement of Rep. Koutoujian that there are 440 unintentional deaths every year in United States because of improperly stored guns and recounting tragic death of Massachusetts twelve year old boy that occurred due to negligent gun storage) (statement of Rep. Locke advocating safe and proper training of gun owners) (statement of Rep. Fagan that "lock-box provisions" will save countless lives and that tough penalties will aid enforcement) (statement of Rep. Casey describing storage provision as attempt "to keep guns out of the hands of people who should not have them") (statement of Rep. Hodgkins noting number of children killed by improperly stored guns and advocating for trigger locks) (statement of Rep. Slattery that gun locks will prevent accidents and will save lives); State House News Service (July 16, 1998) (statement of Sen. Jacques applauding scope of protections included in gun control act including its storage provisions) (statement of Sen. Moore that "attacking the issue of negligent storage of firearms is long overdue"); State House News Service (July 20, 1998) (statement of Rep. Peterson that trigger locks are good idea but that "safe storage is the real solution").

[7]Our conclusion in this respect is consistent with other statutory and regulatory provisions relating to the sale, use, and storage of firearms. General Laws c. 140, § 123, Fourteenth, for example, requires firearms dealers conspicuously to post at each purchase counter the following warning in bold type not less than one inch in height: "*IT IS UNLAWFUL TO STORE OR KEEP A FIREARM, RIFLE, SHOTGUN OR MACHINE GUN IN ANY PLACE UNLESS THAT WEAPON IS EQUIPPED WITH A TAMPER RESISTANT SAFETY DEVICE OR IS STORED OR KEPT IN A SECURELY LOCKED CONTAINER*" (emphasis added).

In addition, 940 Code Mass. Regs. § 16.06(2) (1997) makes it an unfair or

*Commonwealth* v. *Parzick*, 64 Mass. App. Ct. 846, 850 (2005);
*State* v. *Wilchinski*, 242 Conn. 211, 225 (1997) (construing
"secure" to mean "preventing minors from gaining access to
guns and on preventing them from being able to misuse the
weapon"). In this regard, we agree with the Appeals Court that,
as a general proposition, to be secure, "guns [must] be maintained
in locked containers in a way that will deter all but the most
persistent from gaining access." *Commonwealth* v. *Parzick, su-
pra* (door lock that was easily defeatable by using "bobby pin"
did not prevent access to unauthorized persons other than owner
and therefore was "not secure").

What then qualifies as a securely locked container? At a
minimum, to be secure, any qualifying container must be cap-
able of being unlocked only by means of a key, combination, or
other similar means. 18 U.S.C. § 921(a)(34)(C) (2006) (requir-
ing "secure gun storage or safety device" be designed to unlock
only by means of key, combination, or other similar means).
Beyond this requirement, the types of containers that might
qualify are plainly varied. Although not enumerated in the stor-
age statute itself, several types of qualifying containers are
identified in other Massachusetts and Federal statutes regulating
the storage of firearms. These provisions provide significant
guidance on the subject, and we can presume that gun owners
are familiar with them because in order to obtain either a firearm

---

deceptive trade practice to transfer a handgun without explaining how to
safely store it. Indeed, the purchase of a firearm that is not equipped with a
device that fully blocks its use by unauthorized users is required to receive the
following warning from the gun seller:

> "WARNING FROM THE MASSACHUSETTS ATTORNEY GEN-
> ERAL: This handgun is not equipped with a device that fully blocks
> use by unauthorized users. More than 200,000 firearms like this one are
> stolen from their owners every year in the United States. In addition,
> there are more than a thousand suicides each year by younger children
> and teenagers who get access to firearms. Hundreds more die from ac-
> cidental discharge. It is likely that many more children sustain serious
> wounds, or inflict such wounds accidentally on others. In order to limit
> the chance of such misuse, *it is imperative that you keep this weapon
> locked in a secure place and take other steps necessary to limit the pos-
> sibility of theft or accident. Failure to take reasonable preventive steps
> may result in innocent lives being lost, and in some circumstances may
> result in your liability for these deaths.*" (Emphasis added.)

940 Code Mass. Regs. § 16.06(1) (1997).

identification card or a license to carry a firearm in Massachusetts, a prospective gun owner must receive a basic firearm safety certificate after completing a course approved by the colonel of the State police. The curriculum of that course must cover "(*a*) the safe use, handling and storage of firearms; (*b*) methods for securing and childproofing firearms; (*c*) *applicable laws relating to the possession, transportation and storage of firearms*; and (*d*) knowledge of the operation, potential dangers and basic competency in the ownership and usage of firearms" (emphasis added). G. L. c. 140, § 131P (*b*).

Statutory and regulatory references to acceptable containers include safes,[8] weapon boxes,[9] locked cabinets,[10] gun cases,[11] lock boxes, and locked trunks of vehicles.[12] A leading secondary source, Law Enforcement Guide to Firearms Law (20th ed.

---

[8]Federal law governing civil liability for unsafe firearm storage provides that "secure gun storage or safety device" means "a safe, *gun safe, gun case, lock box,* or other device that is designed to be or can be used to store a firearm and that is designed to be unlocked only by means of a key, a combination, or other similar means" (emphasis added). 18 U.S.C. § 921(a)(34)(C) (2006). A person in lawful possession of a handgun who uses one of these devices is entitled to immunity from a qualified civil liability action. See 18 U.S.C. § 922(z)(3)(A) (2006).

[9]General Laws c. 140, § 129D, as amended through St. 1998, c. 180, § 36, deals with the surrender of firearms and ammunition to a licensing authority on denial or revocation of a license and requires that such locations be "equipped with a *safe* for the *secure storage of firearms* and a *weapon box* or similar container for the secure storage of other weapons and ammunition" (emphasis added).

[10]A regulation relating to standards for the licensure of family and school-aged child care programs requires that the child care licensee "must keep firearms unloaded and either stored in a *locked cabinet* or equipped with a trigger lock and stored in a safe, secured place *out of the reach of children*" (emphasis added). 606 Code Mass. Regs. § 7.11(17) (2010).

[11]General Laws c. 140, § 131C (*b*), (*c*), as appearing in St. 1998, c. 180, § 44, requires that anyone licensed to carry a firearm or a large capacity rifle or shotgun in a vehicle must store the weapon "in a locked *case* or other secure container" (emphasis added). Other regulatory provisions referencing the storage of firearms in cases include 323 Code Mass. Regs. § 3.03(11) (2011) ("No person shall carry a firearm, rifle or shotgun in or on a . . . recreation vehicle . . . unless [it] is unloaded and in an *enclosed case*" [emphasis added]) and 740 Code Mass. Regs. § 30.04(1) (2008) ("For transport on an Air Carrier aircraft, the firearm shall . . . be unloaded and contained in a *locked gun case* . . ." [emphasis added]). See 18 U.S.C. § 921(a)(34)(C).

[12]G. L. c. 140, § 131C (*b*), (*c*).

2012), published by the Municipal Police Institute, Inc.,[13] states that a securely locked container can include a soft gun case secured with a padlock, "as well as an expensive gun safe," and that even "glass front furniture style gun cabinets are acceptable providing that they are capable of being locked." *Id.* at 93.[14]

In sum, these references are sufficient to establish a common understanding and practice regarding the secure storage of firearms in locked containers, against which to measure conduct proscribed under the storage statute. As such, they dispose of the defendant's vagueness challenge. *Commonwealth* v. *Orlando,* 371 Mass. 732, 734 (1977) (law not vague if it requires person to conform his conduct to imprecise but comprehensible normative standard); *Commonwealth* v. *Jarrett,* 359 Mass. 491, 496-497 (1971) (uncertainty as to whether marginal offenses are included within coverage of statute does not render it unconstitutional if its scope is sufficiently definite).

This is not to say that locked containers beyond those types referenced in statutes do not qualify as secure under the storage statute. Ultimately, the matter is one of fact for a properly instructed fact finder to determine at trial.

In the case before us, we have two potentially qualifying locked containers, a locked motor vehicle and a locked (or unlocked) glove compartment in a locked motor vehicle. With respect to the motor vehicle itself, we look at the particular manner in which the Legislature has dealt with the possession and transportation of firearms in motor vehicles. See generally

---

[13]According to a November 19, 2011, letter from the director of the organizational development unit and civil service unit of the human resources division of the Executive Office of Administration and Finance to police department appointing authorities and police chiefs, this text is required reading for police officers planning to take promotional examinations.

[14]Law Enforcement Guide to Firearms Law (20th ed. 2012) also recites, without specific citation, that the "Executive Office of Public Safety has stated that a locked room that prohibits unauthorized access will meet the criteria for a locked container. However, a person can not lock his house and consider the entire house a locked container." *Id.* at 93. See *Commonwealth* v. *Parzick,* 64 Mass. App. Ct. 846, 850 (2005) (assuming, without deciding, that bedroom is container but that door lock on room, which was easily defeatable by using "bobby pin," did not prevent access to unauthorized persons other than owner and therefore was "not secure").

G. L. c. 140, § 131C. A class A license holder can of course carry a loaded firearm "under [his] direct control" in a vehicle. The question, however, is whether the Legislature intended that the motor vehicle itself would be a securely locked container under the storage statute when a firearm is kept there and not under the owner's direct control. The other provisions of § 131C lead us to conclude that the Legislature did not. Section 131C (*b*), relating to the possession of firearms in motor vehicles by class B license holders, requires that the weapon be "contained within a locked trunk . . . or in a locked case or other secure container." Similarly, § 131C (*c*), relating to the possession of large capacity rifles and shotguns in motor vehicles by class A and class B license holders, provides that they must be "contained within the locked trunk of such vehicle or in a locked case or other secure container." A contextual reading of these statutory provisions, focused particularly on firearms in motor vehicles, leads us to conclude that the Legislature did not consider a locked motor vehicle itself to be a secure container for the storage of firearms.[15]

This does not resolve whether a locked glove compartment might be adequate under the storage statute. We are of the view that it might depending on the particular factual circumstances including the nature of the locking mechanism, whether the

[15]This is consistent with the Executive Office of Public Safety and Security's interpretation of G. L. c. 140, § 131C, found on its Web site. "Frequently Asked Questions" about Massachusetts firearms laws addresses the following question: "Can I leave my gun in my car if I need to go into the store on my way home from the range or from hunting?" The answers offers the following guidance:

> "If your handgun or large capacity rifle or shotgun is transported in accordance with the provisions of []G.L. c. 140, § 131C (i.e. unloaded and in a *locked case, locked trunk* or *other secure container*) then the gun may be left unattended in the vehicle. *Weapons transported in this manner will automatically be considered 'stored or kept' in compliance with the safe storage requirements of § 131L.*" (Emphasis added.)

This is significant because the Executive Office of Public Safety and Security clearly reads G. L. c. 140, § 131C, as prescribing the behavior necessary to satisfy G. L. c. 140, § 131L, in the context of transporting a firearm in one's vehicle. This interpretation precludes the conclusion that one's locked motor vehicle by itself can qualify as a locked container. We agree with this interpretation.

motor vehicle was also locked and alarmed, and ultimately whether in the circumstances it was adequate to "deter all but the most persistent from gaining access." This is a question of fact, properly decided by the fact finder at trial.

b. *Second Amendment violation.* The defendant contends that the storage statute violates his constitutionally protected right to self-defense as explicated by the Supreme Court in *District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008) (District of Columbia's ban on handgun possession in home and require-ment that lawfully owned firearms be rendered inoperable in home violated Second Amendment's individual right to possess firearms for self-defense), and *McDonald* v. *Chicago*, 130 S. Ct. 3020, 3042, 3050 (2010) (Second Amendment right to bear arms applicable to States). More specifically, he asserts that requiring further locking mechanisms or security measures on a firearm already stored in a locked motor vehicle substantially defeats a person's right to self-defense by preventing immediate access to that firearm.

In addressing the defendant's argument, we agree with his observation that our decision in *Commonwealth* v. *Runyan*, 456 Mass. 230 (2010) (*Runyan*), was limited to whether the storage statute infringed on one's right to possess a firearm for self-defense in the home.[16] Our decision in *Runyan* did not, however, address whether *Heller* applied with equal force to circum-stances outside the home, nor have we ever specifically held this to be the case. We decline to do so here.[17]

---

[16]In *Commonwealth* v. *Runyan*, 456 Mass. 230, 236-237 (2010) (*Runyan*), the defendant contended that the storage statute unconstitutionally infringed on his right to self-defense in light of *District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008). Because our decision in *Runyan* predated the incorporation of the Second Amendment against the States, *McDonald* v. *Chicago*, 130 S. Ct. 3020, 3042, 3050 (2010), we rejected the defendant's argument regard-ing the constitutionality of the storage statute because (at the time) the Second Amendment did not constrain the Commonwealth's ability to restrict access to firearms. See *Runyan*, *supra* at 235. We also rejected the trial judge's assump-tion that the ordinance in *Heller* was identical to the storage statute. *Id.*

[17]Compare, e.g., *Williams* v. *State*, 417 Md. 479, 481, 495-496 (2011) (holding that Second Amendment does not extend outside home), with *United States* v. *Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011) (holding that the Second Amendment might extend outside home but reserving decision on is-sue until Supreme Court speaks authoritatively), with United States *vs.* Weaver, U.S. Dist. Ct., No. 2:09-cr-00222 (S.D. W. Va. Mar. 6, 2012) (ruling that Second Amendment applies outside home).

Yet, even assuming for the purposes of this analysis only that *Heller* applied to firearm possession outside the home, our analysis in *Runyan, supra* at 235-237, leads us to conclude that the storage statute would pass constitutional muster. The storage statute plainly does not bar the defendant from carrying a firearm on his person or under his control without a trigger lock or the need to secure it in a locked container either inside or outside of a motor vehicle.[18] See G. L. c. 140, § 131C (*a*)-(*b*) (specifically permitting gun owner holding class A license to carry to possess or carry firearm on his person for all lawful purposes). Here, as in *Runyan*, the storage statute would not infringe on the defendant's Second Amendment right to self-defense because it only imposes storage restrictions where the firearm is not within the gun owner's possession or control.

Moreover, given our conclusion in *Commonwealth* v. *Mc-Gowan, ante* 232, 244 (2012), that the restrictions imposed by the storage statute fall outside the scope of protection afforded by the Second Amendment and that rational basis is the appropriate level of scrutiny, we assume that the storage statute would also pass that low threshold in a context outside the home, where the State's interest in preventing unauthorized access to firearms is arguably even greater. Consequently, we reject the defendant's contention that the storage statute infringes on his right to self-defense in this context.

c. *Sufficiency of the evidence.* The defendant next contends that there was insufficient evidence at trial to support his convictions under the carrying and storage statutes. We discuss each in turn.

The carrying statute provides in relevant part that "no person carrying a loaded firearm . . . shall carry the same in a vehicle unless such firearm while carried therein is under the direct control of such person." The defendant contends that there was no evidence that his firearm was out of his possession (or his direct control) when he traveled to work in his vehicle. Consequently, he was carrying his firearm consistent with the require-

---

[18]The storage statute provides that a "weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user." G. L. c. 140, § 131L (*a*). We discuss this provision and its relationship to the carrying statute in greater detail below.

ments of the statute. The Commonwealth, on the other hand, argues that so long as the firearm remained in the defendant's vehicle — even after he had left and locked it — the firearm was being carried by him in a vehicle within the meaning of the statute. And, because the firearm was no longer under his direct control, he violated the carrying statute. We agree with the defendant.

The issue in dispute is not a factual one. There was no evidence presented at trial that the firearm was out of the defendant's control while he was traveling in his motor vehicle. Indeed, all of the evidence was to the contrary. The only question, then, is whether the carrying statute applies once the defendant leaves his vehicle and leaves the firearm in it. Our reading of the inter-relationship between the carrying and storage statutes leads us to conclude that it does not.[19]

Once the defendant left his motor vehicle and the firearm in it, he became subject to the storage statute because he was storing or keeping his firearm in a "place" neither on his person nor "under the control of the owner or other lawfully authorized user." G. L. c. 140, § 131L (a). Consequently, the evidence at trial was insufficient as a matter of law to support a verdict of guilty on the carrying charge, and a judgment of not guilty must be entered on his behalf.

With respect to the sufficiency of the evidence on the storage charge, we examine the evidence in light of our conclusion that a motor vehicle is not itself a securely locked container within the meaning of the storage statute, but that the storage of a firearm in a securely locked container within a motor vehicle would satisfy its requirements. The evidence was conflicting on whether the glove compartment was locked or unlocked. At least one witness called by the Commonwealth testified that it was unlocked, while the defendant maintained that it was locked. Consequently, the jury properly could have concluded that the defendant stored his loaded firearm in an unlocked container

---

[19]In *Commonwealth* v. *Patterson*, 79 Mass. App. Ct. 316, 319 (2011), the Appeals Court, in interpreting the storage statute exemption for weapons "carried by or under the control of the owner," concluded that (1) "carried" requires actual physical possession of the firearm and (2) "under the control" requires a person be sufficiently nearby the firearm to prevent immediately its unauthorized use.

within a motor vehicle. This is sufficient to support his conviction under the storage statute.

d. *Jury instructions.* Finally, we turn to the defendant's argument that the jury instructions were deficient. Although the defendant cites a variety of reasons why the jury instructions were wanting,[20] we focus our attention exclusively on the judge's failure to provide the jury with any guidance regarding what qualifies as a securely locked container for purposes of the storage statute.[21]

"A judge must instruct a jury on the law applicable to the crime for which a defendant is charged . . . [by] defin[ing] or explain[ing] the offense charged [including] words or phrases in the statutes or cases establishing the offense." W.C. Flanagan, Trial Practice § 20.12, at 642-643 (2d ed. 2005). *Commonwealth v. Shaffer,* 367 Mass. 508, 512 (1975) (jury must receive complete instructions from judge, including explanation of proper factors to be considered in determining issue). Because the defendant objected to the instructions, we review under a harmless error standard. An error is nonprejudicial only "[i]f . . . the convic-

---

[20]The defendant argues that the judge's instruction was prejudicial because it (1) omitted express statutory language and (2) lowered the Commonwealth's burden of proof on the carrying charge. Additionally, the defendant argues that judge erred by submitting the verdict slip on the carrying charge with the appellation "leaving a firearm in a motor vehicle." Because we reverse the defendant's conviction under the carrying statute, we need not address the defendant's argument that he was prejudiced by the judge's jury instructions and the appellation affixed to the verdict slip as it relates the carrying charge.

[21]The judge instructed the jury on the storage charge as follows:

> "The defendant is charged with violating chapter 140 of the Massachusetts General Laws section 131L (a). It shall be unlawful to store or keep a firearm in any place unless such weapon is secured in a locked container or equipped with a tamper resistant mechanical lock or other safety device, properly engaged so as to render such weapon inoperable by any person other than the owner or other lawfully authorized user."

It is clear that the judge merely repeated the statutory language verbatim without providing any guidance as to what qualifies as "secured in a locked container." At the same time, the judge's statutory instruction was also incomplete because it unexplainably omitted the final sentence of the storage statute, which reads: "For purposes of this section, such weapon shall not be deemed stored or kept if carried by or under the control of the owner or other lawfully authorized user." G. L. c. 140, § 131L (*a*).

tion is sure that the error did not influence the jury, or had but very slight effect . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). Because the jury's determination concerning whether a locked glove box within a locked motor vehicle qualifies as a securely "locked container" was central to the defense, the judge should have offered additional guidance regarding the term's meaning.[22] His failure to include such guidance was not harmless error, and the defendant is entitled to a new trial on the storage charge.

3. *Conclusion.* In sum, although we reject the defendant's constitutional claims, we nevertheless reverse his conviction under the carrying statute and direct a verdict in his favor based on the insufficiency of the evidence. Additionally, we reverse the defendant's conviction under the storage statute due to the judge's deficient jury instructions, and we remand the case to the District Court for retrial on the complaint charging a violation of G. L. c. 140, § 131L (*a*) and (*b*).

*So ordered.*

---

[22]The jury's confusion on this issue was apparent given that they requested the following clarifications: (1) "What was the testimony regarding whether the glove box was locked or unlocked?" and (2) "Can we have a detailed copy of the laws that were violated?"