NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-512

COMMONWEALTH

vs.

ROBERT L. BROWN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a); possession of ammunition without a license, in violation of G. L. c. 269, § 10 (h); and improper storage of a firearm, in violation of G. L. c. 140, § 131L (a).  On appeal, and for the first time, the defendant facially challenges the constitutionality of the firearms licensing scheme underlying his firearm and ammunition possession convictions and the firearms storage statute.  Because we conclude that the defendant has not met his burden to demonstrate that these statutes are unconstitutional in all of their applications, we affirm.

Discussion. The defendant asserts that the unsuitability determination within G. L. c. 140, § 131 (d) and the storage requirements set forth in G. L. c. 140, § 131L (a) violate the Second Amendment to the United States Constitution because they are inconsistent with this nation's historical tradition of firearm regulation.[1] He did not preserve these arguments in the District Court. The defendant also argues that his trial counsel was ineffective for failing to raise these issues before that court.

1. Constitutional challenges. a. Standard of review. The defendant urges us to review his unpreserved constitutional challenges under the "clairvoyance exception." Commonwealth v. Guardado, 493 Mass. 1, 3-4 (2023) (Guardado II). See Commonwealth v. Guardado, 491 Mass. 666, 686 (2023). As described in Guardado II, supra, the clairvoyance exception "allows a defendant to raise an unpreserved issue on appeal when the constitutional theory on which the defendant has relied was not sufficiently developed at the time of trial" (quotation and citation omitted). The defendant's trial was on November 6, 2023. At that point, the United States Supreme Court's decision

_____

[1] At oral argument, the defendant, relying on Commonwealth v. Donnell, 495 Mass. 471, 477-478 (2025), asserted that the "may issue" language in G. L. c. 140, § 131 (d) is unconstitutional.

in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022) (Bruen), was the most recent and leading case on the scope of the Second Amendment. See Guardado II, supra. In Bruen, the Supreme Court ruled that every burden on the right to bear arms must be rooted in history and tradition, such that the "how" and the "why" of the regulation can find a historical analogue. See Bruen, supra at 26-30. This is the theory on which the defendant relies to attack the constitutionality of the statutes at issue. Accordingly, it was "sufficiently developed at the time of [the defendant's] trial," Guardado II, supra, and the clairvoyance exception does not apply. Thus, because the defendant did not raise this issue at trial, it is waived and we review only for a substantial risk of a miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 294 (2002).

Furthermore, "[a]s a general matter, the United States Supreme Court has cautioned that facial challenges are 'disfavored' because they 'often rest on speculation' and 'threaten to short circuit the democratic process.'" Commonwealth v. Marquis, 495 Mass. 434, 441 (2025), quoting Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-451 (2008). "Consequently, a facial challenge is the most difficult challenge to mount successfully, because it requires a defendant to establish that no set of

3

circumstances exists under which the [statute] would be valid" (quotations omitted). Marquis, supra at 441-442, quoting United States v. Rahimi, 602 U.S. 680, 693 (2024). "For the Commonwealth to prevail, it need only demonstrate that the Commonwealth's . . . firearm licensing scheme [and firearm storage statute are] compatible with the Second Amendment and with the Fourteenth Amendment in some of [their] applications" (quotation and citation omitted). Marquis, supra at 442. "Conversely, the defendant shall prevail if and only if he demonstrates that the law[s] are unconstitutional in all of [their] applications" (quotation and citation omitted).[2] Id.

b. Facial challenge to G. L. c. 140, § 131 (d). The defendant argues that the "unsuitability" provision of G. L. c. 140, § 131 (d) (§ 131 [d]), renders the statute facially invalid because it impermissibly requires an exercise of discretion expressly rejected in Bruen. At the time the

---

[2] The defendant makes a brief reference to "a second type of facial challenge" recognized by the United States Supreme Court in Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449 n.6 (2008), without any additional explanation of why or how it is relevant here. To the extent that he intends to raise a separate facial challenge argument, we decline to consider it. "[B]ald assertions of error that lack[ ] legal argument . . . [do not] rise[ ] to the level of appellate argument required by" Mass. R. A. P. 16, as appearing in 481 Mass. 1628 (2019) (quotations omitted). Kellogg v. Board of Registration in Med., 461 Mass. 1001, 1003 (2011).

4

defendant was arrested,[3] § 131(d) stated that "[t]he licensing authority may deny the application or renewal of a license to carry . . . if, in a reasonable exercise of discretion, the licensing authority determines that the applicant or licensee is unsuitable to be issued . . . a license to carry."  G. L. c. 140, § 131 (d), as amended through St. 2014, c. 284, §§ 46, 47, 49, 52, 54 (effective January 1, 2021).  "Unsuitability" was to be determined based on "reliable and credible information that the applicant . . . if issued a license . . . may create a risk to public safety."  Id.  In light of the Supreme Judicial Court's (SJC's) decision in Marquis, however, we are not persuaded.  See Marquis, 495 Mass. at 457, quoting Rahimi, 602 U.S. at 698 (defendant's facial challenge failed where suitability determination in non-resident firearm licensing scheme fit "neatly within the tradition the surety and going armed laws represent").

In Marquis, the SJC analyzed similar suitability language within G. L. c. 140, § 131F (§ 131F).  Specifically, § 131F

---

[3] In his brief, the defendant cited an amended version of § 131 (d) which added language to the standard for determining unsuitability and changed the phrase "may issue" to "shall issue."  See G. L. c. 140, § 131 (d), as amended through St. 2022, c. 175, § 4-17A (effective August 10, 2022).  However, this amendment was made after the defendant was charged.  For the purposes of our review, we consider the language of the statute as it appeared when the defendant was charged.

5

provided that a firearms license "shall be issued" to a nonresident applicant if the applicant was neither a "prohibited person" nor a person "determined unsuitable" by "credible information" suggesting that the applicant, if issued a license, would pose "a risk to public safety or a risk of danger to self or others." Marquis, 495 Mass. at 436, quoting § 131F. The factors relevant to a suitability determination under § 131F are the same as those relevant to a determination of unsuitability under § 131 (d). See Marquis, supra at 452. After determining that this restriction was based on a public safety rationale, the SJC concluded that "[i]f there is any point of consensus about what purposes have historically been recognized as a permissible basis for regulating access to firearms, it is 'what common sense suggests: [w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed.'" Id. at 453, quoting Rahimi, 602 U.S. at 698. Further, the SJC decided that, where the suitability determination was the only basis on which an applicant could be denied a license, and where the criteria for unsuitability were appropriately guided by narrow standards, the "how" of the regulation similarly satisfied the Bruen historical analysis. See Marquis, supra at 455-456.

At oral argument, the defendant conceded that Marquis controls here, and we agree. Where the language of the

6

suitability provision in § 131 (d) paralleled the language of the suitability provision in § 131F, and the criteria used for determining unsuitability is the same for each statute, there is no reason to think the SJC's analysis of § 131F would not apply to the language in § 131 (d).  Accordingly, the suitability provision in § 131 (d) was not facially unconstitutional.

We pause briefly to address the defendant's argument that the holding in Commonwealth v. Donnell, 495 Mass. 471 (2025), presented a new challenge to the language of § 131 (d).  We are not persuaded that Donnell compels the conclusion that the "may issue" language in § 131 (d) combined with the discretion vested in the licensing authority renders the statute unconstitutional.

While the argument has not been briefed, see Mass. R. A. P. 16 (a) (9) (A), 481 Mass. 1628 (2019), because of the importance of the issue, we exercise our discretion to consider the issue on appeal within the limited context of the arguments raised by the parties at oral argument and conclude that it is without merit.  See Commonwealth v. Yasin, 483 Mass. 343, 349-350 (2019) (appellate courts may exercise discretion to consider issue raised for first time on appeal where question presented is of some public importance).

As the Commonwealth argues, the discretion afforded to the licensing authority under § 131F to deny a license to an otherwise qualified person was materially different from the

discretion afforded to the licensing authority under § 131 (d), and thus the holding of Donnell does not control.[4]  In Donnell, the SJC primarily took issue with two provisions of § 131F:  the use of "may issue" language instead of "shall issue" language,[5] and the power of the licensing authority to deny a license based on "such terms and conditions as [the] colonel may deem proper."  Donnell, 495 Mass. at 481, quoting G. L. c. 140, § 131F.  The SJC remarked that the combination of these provisions created a constitutionally problematic licensing scheme because it "confer[red] on officials the unfettered discretion to deny licenses even where the applicant is otherwise qualified."  Donnell, supra.

In comparison, although § 131 (d) used "may issue" language instead of "shall issue" language, it did not confer on the licensing authority constitutionally problematic discretion to

---

[4] Donnell, like Marquis, involved a challenge to the firearm licensing scheme for nonresidents under § 131F, but not the suitability provision at issue in Marquis.

[5] In Bruen, 597 U.S. at 14-15, the Supreme Court explained that a "may issue" law is one "under which authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the . . . license."  In contrast to "may issue" schemes, the Court explained that the criteria in a permissible "shall issue" firearm licensing scheme must be based on "narrow, objective, and definite standards" and not on the "appraisal of facts, the exercise of judgment, and the formation of an opinion" (citations omitted).  Id. at 38 n.9.

8

deny a license to an otherwise qualified applicant.  Rather,

§ 131 (d) stated that the licensing authority may issue a

license "if it appears that the applicant is not a prohibited

person," and, later in its text, gave the licensing authority

the power to deny an application if the applicant was determined

to be unsuitable.  As explained in Marquis, 495 Mass. at 455-

456, this unsuitability determination was limited to whether the

applicant poses a clear threat of physical violence to another,

and therefore was consistent with the history and tradition of

the Second Amendment.  Therefore, § 131 (d) did not "confer on

officials . . . unfettered discretion."  Donnell, 495 Mass. at

481.  Accordingly, the "may issue" language in § 131 (d) did not

render it facially unconstitutional.

c.  Facial challenge to G. L. c. 140, § 131L (a).

Similarly, the defendant challenges the constitutionality of the

firearms storage statute, G. L. c. 140, § 131L (a) (§ 131L [a]),

arguing that it does not align with the nation's history and

tradition of firearm regulation.  Section 131L (a) states,

> "It shall be unlawful to store or keep any firearm in
> any place unless such firearm is secured in a locked
> container or equipped with a tamper-resistant
> mechanical lock or other safety device, properly
> engaged so as to render such firearm inoperable by any
> person other than the owner or other lawfully
> authorized user.  It shall be unlawful to store or
> keep any stun gun in any place unless such firearm is
> secured in a locked container accessible only to the
> owner or other lawfully authorized user.  For purposes
> of this section, such firearm shall not be deemed

9

stored or kept if carried by or under the control of the owner or other lawfully authorized user."

In District of Columbia v. Heller, 554 U.S. 570, 628-630 (2008), the Supreme Court declared unconstitutional a regulation that completely banned handguns in the home and required any firearms kept in the home to be disassembled or always bound by a trigger lock. The Court emphasized that nothing in their analysis "suggest[s] the invalidity of laws regulating the storage of firearms to prevent accidents." Id. at 632.

After the Supreme Court decided Heller, but before it decided Bruen, the SJC confirmed the constitutionality of § 131L (a) in two cases decided on the same day: Commonwealth v. McGowan, 464 Mass. 232 (2013), and Commonwealth v. Reyes, 464 Mass. 245 (2013). In McGowan, supra at 243, the court declared that "§ 131L (a) is consistent with the right of self-defense in the home because it does not interfere with the ability of a licensed gun owner to carry or keep a loaded firearm under his immediate control for self-defense." The court explained that the purpose of the firearms storage statute is "to keep firearms out of the hands of those not authorized by law to possess a firearm, including but not limited to felons, the mentally ill, and children." Id. at 241-242. Finally, the court held that, where § 131L (a) is consistent with the right to bear arms and "is designed to prevent those who are not licensed to possess or

10

carry firearms from gaining access to firearms, it falls outside the scope of the Second Amendment."  Id. at 244.

In Reyes, the court further reiterated that "the underlying purpose of firearms control legislation is to assuage the societal concern with weapons reaching the hands of unauthorized users" (quotation and citation omitted), Reyes, 464 Mass. at 250, and clarified that the use of the word "secured," rather than "stored" or "placed," sufficiently narrowed the scope of the regulation so as to not render the statute unconstitutionally vague, see id. at 251-254.  The court also reiterated its holding in McGowan that "the storage statute would not infringe on the defendant's Second Amendment right to self-defense because it only imposes storage restrictions where the firearm is not within the gun owner's possession or control."  Reyes, supra at 257.

The defendant urges us to nevertheless disregard these holdings because they were decided before Bruen and did not consider whether § 131L (a) is consistent with the nation's history and tradition of firearm regulation.  We decline to do so.  Because SJC precedent establishes that § 131L (a) does not implicate the plain text of the Second Amendment, Bruen is not implicated.  See Bruen, 597 U.S. at 24 (Second Amendment is not implicated unless its "plain text covers an individual's

11

conduct"); McGowan, 464 Mass. at 244 ("§ 131L (a). . . falls outside the scope of the Second Amendment").

In any event, the defendant has not satisfied his burden to show that every application of § 131L (a) is unconstitutional. As noted in McGowan, 464 Mass. at 241-242, the statute has constitutionally permissible applications in instances where the statute seeks to prevent possession of firearms by unauthorized users, such as the mentally ill, children, and felons.  See Heller, 554 U.S. at 626 ("nothing in [the Court's] opinion should be taken to cast doubt on the longstanding prohibitions on the possession of firearms by felons and the mentally ill"). Where § 131L (a) permissibly prevents access to firearms by unauthorized users, we cannot say the statute is unconstitutional in every application, and the defendant's facial challenge fails.

2.  Ineffective assistance of counsel.  The defendant claims that his trial counsel was ineffective for not raising these constitutional challenges before the District Court.  We examine ineffective assistance claims to determine whether there has been "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer -- and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial

12

ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

Passing over the first prong, we conclude that the defendant's claim fails the second prong of the Saferian test. See Saferian, 366 Mass. at 96.  As we have explained, the constitutional theories now advanced by the defendant would not have offered a successful defense to his convictions.  Given that we have rejected the defendant's facial challenges to the relevant statutes, trial counsel's failure to raise these arguments did not deprive the defendant of an available and substantial ground of defense.  See Commonwealth v. Filoma, 79 Mass. App. Ct. 16, 24 (2011) (omission of "futile tactic" will not support claim of ineffective assistance of counsel). Accordingly, the defendant's trial counsel was not ineffective.

Judgments affirmed.

By the Court (Hand, Grant & Wood, JJ.[6]),

Clerk

Entered:  August 6, 2025.

---

[6] The panelists are listed in order of seniority.

13